224 P.2d 643

**SINGLETON et ux. v. DUNN et al.**

No. 5149.

Supreme Court of Arizona.

Nov. 20, 1950.

Corbin & Orme, of Phoenix, for appellants.

Harold R. Scoville and Charles A. Stanecker, of Phoenix, for appellees.

DE CONCINI, Justice.

The defendant Everett Singleton and his brother, Chuck Singleton, owned a second-hand well-drilling rig and had a well-drilling business which they operated in Maricopa County. The well-rig, a homemade affair, was designed and built for the purpose of drilling wells for domestic purposes and especially six and eight inch wells. On Sunday, March 23, 1947, Everett Singleton, the defendant, was drilling a well with the rig about one-quarter mile south of the Phoenix-Wickenburg highway in the community of Surprise. The well was being drilled for and under contract with a Mrs. Statler. Lige Dunn and Charles E. Mason, the plaintiffs herein, who were planning to enter the well-drilling business, were driving around this area in the company of an experienced well driller, Herman Parker, whom they planned to employ in their business, trying to locate a well-drilling rig they could purchase. They saw this rig in operation and stopped to see if they could purchase it. After some preliminary observations by Dunn and discussion with Everett Singleton concerning the possible purchase of the rig, it was agreed by the two that Everett would consult his brother, Chuck, that evening since Chuck owned a half interest in the business,

then notify Dunn of their decision. At this time both parties apparently disclaimed any special knowledge or experience concerning the well-drilling business, and Parker, the experienced driller, sat in the car and made no examination or inspection of the rig and outfit. That evening Everett notified Dunn they, the Singletons, had decided to sell if he would pay cash. Dunn agreed to pay cash, take over the drilling machine, the tools, equipment and the business. A date was made to meet the next day at Singleton's office in Glendale, Arizona.

On Monday, the 24th, as arranged by phone the night before, plaintiff Dunn met the Singletons in Glendale, then went with Everett Singleton to the drill location and to a place about five miles distant where the tools and equipment which were to be included in the transaction were stored. These tools were found stacked on the ground covered with dirt. Plaintiffs alleged no examination of these tools was possible and further that the tools attached to the rig were suspended in the hole then being drilled and could not be examined because the rig was not in operation.

The parties returned to the defendant's place of business in Glendale and after further discussion of the rig, equipment and terms of sale, plaintiff Dunn paid defendants the sum of $2000 on the agreed price of $6500. The balance was to be paid $3500 in cash two days later, the remainder of $1000 to be paid in services, Dunn to drill a 12-inch well for the Singletons for that

amount. A receipt for the down payment of $2000 was given and also a purported bill of sale which describes as part of the equipment, 1 stem and 2 bits 8″, 1 stem and 2 bits 6″, 1 set jars 6″. Plaintiffs allege this part of the equipment was never delivered. After payment of the $2000 plaintiffs went into possession of the personal property and commenced working on the well for Mrs. Statler under defendants' contract with her.

A few days later when the defendants had procured a certificate of title from the motor vehicle division of the highway department, which certificate was necessary to the transfer of the rig, demand was made for the remainder of the cash due. Plaintiff in his turn made demand for delivery of the alleged missing tools and equipment. There is conflict in the evidence as to what transpired before defendants repossessed the rig and equipment, whether the defendants then summarily ordered plaintiffs from the property or whether plaintiff Dunn then closed down the rig, suspended all drilling operations and refused to complete the transaction. Plaintiffs now seek recovery of the $2000 down payment and damages for loss of profit. Defendants cross complained asking to retain the sum of $2000 as earnest money paid and for damages to the business and equipment sold to plaintiffs.

The substance of the controversy seems to be that the bill of sale specified, among other things, 1 stem and 2 bits 8″, 1 stem and 2 bits 6″ and 1 set jars 6″ and plaintiffs claim this portion of the equipment was never delivered; that the rig, though satisfactory, was useless for their purpose unless the specified tools were furnished also; that the equipment furnished—one 4″ bit, a set of 4″ jars, a 4″ stem, a built-up 6″ bit, useless as an 8″ bit and which could only be repaired and used as a 6″ bit,—did not comply with the bill of sale; that no 6″ or 8″ drill stem was delivered but only a sinker bar being used as such; that there was no set of 6″ jars furnished except a useless one which had been cut and broken. The defendants in their turn alleged that all tools included in the transaction were delivered.

Judgment on the unanimous jury verdict for damages in the amount of $2000 was given in favor of the plaintiffs and defendants appeal stating eleven assignments of error. Some of defendants' assignments treat phases of the same proposition of law and in those cases the assignments will be considered together.

We will first consider assignments numbered 5, 1 and 2. Defendants' assignment 5 is that the court erred in giving, despite defendants' objection, plaintiffs' third requested instruction stating that where the buyer makes known his purpose to the seller and relies on the latter's skill and judgment, there is an implied warranty that the goods shall be reasonably fit for that purpose. They object that this instruction was without the issues and pleadings of the case.

The record shows there was sufficient evidence to justify the jury's finding of an implied warranty of quality and fitness of the chattels sold. Plaintiffs made known what they wanted and needed for their proposed business venture. There is evidence that plaintiffs made inquiry concerning the tools available and relied on the answer and judgment of the defendants. The primary question of fact to be determined here relative to this warranty, i. e., the reliance of the buyer, was for the jury as triers of fact to determine. While plaintiffs failed to plead reliance or the breach of this warranty in express terms, the evidence adduced at the trial was sufficient to correct such deficiencies in the pleadings. State v. Barnum, 58 Ariz. 221, 118 P.2d 1097; Salt River Valley Water Users' Ass'n v. Berry, 31 Ariz. 39, 250 P. 356; Britton v. Jackson, 31 Ariz. 97, 250 P. 763; Section 21-449, A.C.A. 1939.

■■ It might be asserted there is no room for this implied warranty when the buyer has inspected or had the right to inspect the goods. Under section 52-515(3), A.C.A. 1939, it is stated that if the buyer has examined the goods, no implied warranty of quality or fitness exists "as regards defects which such examination should have revealed". It is stated in 29 A.L.R. 1231: " * * * The rule of caveat emptor, according to the trend of the authorities, does not usually operate to preclude the implication of a warranty of some character, either of fitness, condition, merchantability or description from sales of personalty, especial-ly where there was no opportunity for an efficient inspection, or *where the buyer relied upon the skill and judgment of the seller. * * *"* (Emphasis supplied.) With this statement we agree. In the instant case no efficient inspection was made although the jury could have found that the opportunity was present. Both the buyer and the seller disclaimed special skills or qualifications but the seller, who was actually engaged in the operation of the rig, affirmatively stated that the tools and equipment were of certain sizes and the buyer was found to have relied upon those representations. To hold under the circumstances that the mere opportunity to inspect precludes justifiable reliance by the buyer on the skill and judgment of the seller and thereby foreclose the existence of this warranty would be a failure to do justice. Drumar Mining Co. v. Morris Ravine Mining Co., 33 Cal.App.2d 492, 92 P.2d 424.

■ In assignments 1 and 2 defendants raise the objection that the following questions were asked by plaintiffs' attorney and were permitted by the court to be answered over their objections:

"Q. Was it broken or crumpled on the edges before you started?"

"Q. Do you remember what their condition was with regard to the face of the bit?"

They were objected to on the ground that the questions asked were relevant only to an implied warranty of quality and fitness and therefore were without the issues of the

case. Aside from our conclusions just expressed concerning the litigated issue as to such a warranty the evidence was also relevant to the performance of the contract by the defendants, an issue that was before the court on the pleadings. Under the agreement defendants were bound to deliver 8″ bits and the evidence is admissible on the question whether any 8″ bits were ever delivered at all.

 Defendants' assignment of error No. 3 that the court refused to allow defendants to introduce evidence on behalf of their cross complaint is without merit. Even though the cross complaint stated an action in some respects, yet at the close of the plaintiffs' case the evidence was uncontradicted that the plaintiffs were notified that they had lost their $2000 and they should stay away from the rig. Such notice amounted to a forfeiture of the contract by the defendants which was not in accordance with section 52-613, A.C.A. 1939, Retaking Possession (Sales under Conditional Contracts). However, after defendants had put on their case, there was evidence that plaintiffs had abandoned the well rig, and if such were true there was no necessity to give notice in accordance with section 52-613, supra. The law does not require the doing of a futile thing. Schmitt v. Sapp, 71 Ariz. 48, 223 P.2d 403.; Gallaway v. Smith, 70 Ariz. 364, 220 P.2d 857, 860. While that maxim was not specifically mentioned in the case of Gallaway v. Smith, supra, yet we subscribed to it in effect when we approved the rule, "* * * A sale of the mortgaged property by the mortgagee with the mortgagor's consent has been said to operate as a formal foreclosure of the mortgage." In other words, no formal foreclosure was necessary because such an act under the circumstances would be superfluous and futile in its results.

 At the close of the defendants' case, there was a conflict of evidence on that point and had the defendants renewed their offer to put on evidence to sustain their cross complaint, it should then have been admitted. However no such renewal offer was made by defendants and no error was committed by the court in denying the evidence at the time it did.

The next assignments of error deserving of consideration are 4 and 7. Defendants contend in 4 that the trial court erred in instructing the jury concerning a sale by description, that under the evidence and the pleadings such a finding would be without the issues of the case. The instruction objected to is as follows: "Ladies and Gentlemen of the jury you are instructed that the laws of the State of Arizona provided that in a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description. In this case, therefore, if you find from a preponderance of the evidence that the well drilling rig, drill stems, jars, bits and equipment involved in the dealings between the plaintiffs and the defendants were sold to the plaintiffs by description, then in

that event, you are instructed that in the absence of some different agreement between the parties, with reference thereto, that the defendants were obligated and required by law to furnish such drilling rig, tools and equipment as would correspond with the description." In their assignment 7 defendants contend the trial court erred in modifying their requested instruction concerning a sale on inspection in that the court by striking a portion of the requested instruction thereby rendered the instruction confusing and misleading and that by calling attention to the previous instruction concerning a possible finding of a sale by description the court below brought in an issue objected to under assignment 4.

Because of this latter objection, the two assignments will be discussed together. The words stricken from the defendants' requested instruction No. 2 which were made the basis of the objection raised in assignment 7 were as follows: "You are instructed that under the evidence here the only thing complained of by the pleadings and the evidence of the plaintiffs is that the defendants failed and refused to deliver one stem and two 8″ bits and one stem and two 6″ bits and one set of jars 6″." The words added by the trial court to defendants' requested instruction No. 2, and to which objection was also made, were "unless you find from a preponderance of the evidence that the property was sold by description as I have heretofore instructed you, or unless you find from a preponderance of the evidence the parties had otherwise agreed."

In the first instance assignment 7 objects to the striking out of the first portion of the requested instruction which, if granted, would have confined the issues solely to the question whether or not the alleged missing tools were delivered. There is nothing wrong in confining the issues to that question but the instruction as requested amounted to a comment on the evidence and therefore was properly stricken. Furthermore, its omission did not prejudice defendants' rights in any respect. The instruction as given presented the question to the jury whether this was a sale on inspection. The final determination of that question was to be dependent on the examination of the property made by the buyers, the facilities and opportunity for full inspection, the defects which such examination ought to have revealed and whether they could have determined the size and condition of such equipment from such examination or opportunity to examine. Although the court did not attempt to relate the law to the facts, nevertheless the law was correctly stated and the issue whether this was a sale on inspection was properly before the jury unless the court erred concerning its reference to a possible sale by description when it inserted the words previously quoted. As to defendants' objection to this addition to his requested instruction, we will dispose of that in our treatment of assignment 4 since the same point is involved.

158

In assignment 4, it is contended that the instruction on sale by description brings in a question which is without the issues as presented by the pleadings and evidence and that error was committed since it constituted submission of a question of law to the jury. With reference to this latter objection, neither party requested nor did the court give any instruction on what constituted a sale by description or sale on inspection and of course no assignment of error for want of said instruction can now be made on that score. As to the objection that the issue of sale by description is without the pleadings and evidence, the answer is that if error was committed in granting the instruction, it was not prejudicial because from the facts adduced at trial this was a sale with an express warranty, which point will be subsequently developed herein.

Under the evidence, it was the view of the trial court in granting the instruction that this sale might have been one by description under section 52-514, A.C.A.1939, thus following the rule laid down in Smith v. Zimbalist, 2 Cal.App.2d 324, 38 P.2d 170. In that case Zimbalist, a violinist of prominence and a collector of rare and old violins made by the old masters, visited and inspected plaintiff's collection of old violins. Plaintiff did not offer his violins for sale but upon inquiry by Zimbalist as to the price of a certain "Stradivarius" violin and a certain "Guarnerius" violin a price was agreed upon by the parties and a sale took place in which plaintiff gave a bill of sale for "one Joseph Guarnerius violin and one Stradivarius violin dated 1717." It will be noted that the plaintiff at no time sought this sale nor made any representations concerning the genuineness of the two violins except in the bill of sale. After a review of the authorities from the time of the old common law and nothing that the rule was formerly otherwise, the court held as a matter of law that the description in a "bill of parcels" or "sale note" of the thing sold amounts to a warranty on the part of the seller that the subject matter of the sale conforms to such description. Smith v. Zimbalist, supra, 38 P.2d 170 at 174. We have previously announced a similar principle in Haining Lumber Co. v. Octavius Leon, Inc., 70 Ariz. 31, 215 P.2d 909.

Defendants contend the facts of this case do not justify a finding that this is a sale by description for the reason that such a sale can only arise where the specific article was either not in existence or not on hand at the time and place of sale. Williston in his treatise on "Sales" defines a sale by description technically as one where the identification of the goods, which are the subject matter of the bargain, depends solely upon the description set forth by the parties. 1 Williston on Sales, 3d Ed., sec. 225. While the sale here was of a specific drilling rig with certain tools and equipment whose identification, defendants contend, did not depend upon their description but rather the seeing of them by the plain-

tiffs, nevertheless, in the case here, it is a sale with an express warranty by reason of defendants' affirmation of fact in the bill of sale and plaintiffs' reliance thereon. Section 52-512. A.C.A.1939. Furthermore, although the goods in the instant case were in existence at the time and place of the sale, yet the jury could have found and apparently did find they were not available for ready examination. The drill and stem were in the well being drilled and the rig was not running; other tools in another location were in a pile covered with dirt. It must be remembered that each of these tools in dispute weighed hundreds of pounds. We are not prepared, therefore, to hold the verdict erroneous on this account.

■ Under section 52-512, A.C.A.1939, an express warranty is defined as follows: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. * * *" In this case the seller has affirmed certain facts relating to the goods, namely that the tools were of certain size, which affirmations, as the jury could find, had a natural tendency to induce the buyer to purchase the goods. Whether it is a case of sale by description or a sale with an express warranty, failure to deliver the goods as specified results in a breach of warranty for which the buyer has certain remedies.

The argument of the defendants goes further than this for they contend that by reason of his inspection and opportunity to examine, the buyer thereby became charged with all knowledge he might have obtained had he pursued the inquiry to the end with diligence and completeness and therefore cannot claim reliance upon any alleged warranties. In support of this proposition the cases of Bell v. Lammon, 51 N.M. 133, 179 P.2d 757; Sorrells v. Clifford, 23 Ariz. 448, 204 P. 1013; and Grass v. Steinberg, 331 Ill.App. 378, 73 N.E.2d 331 are cited. These cases are distinguishable on their facts in that a thorough examination by an experienced person was made in each of the cited cases. Such was not the situation here. If any of the cited cases were applicable, the Grass v. Steinberg case would be the most persuasive since it was decided under the Uniform Sales Act and its pertinent sections. Incidentally, Arizona adopted the act in April, 1907, and was the first state in the Union to do so. 168 A.L.R. at 392. The Grass case involved the sale of a lathe described in the conditional sales contract as a "#8 Warner Swasey Machine." The buyer, an experienced machinist, made numerous and repeated examinations of the machine and with the help of other skilled machinists took portions of the lathe apart before he bought it. It is submitted that the decision in that case is correct because it is grounded on the finding that no sale by description existed, that the descriptive words in the bill of sale raised no warranties of any

sort, express or implied, that those words were only properly understood as stating incidentally, because of the buyer's thorough examinations, the specific goods upon which the parties had already agreed and that the buyer, therefore, did not rely upon them nor was induced thereby to purchase the goods. Hellman v. Kirschner, 191 N. Y.S. 202; Kraig v. Benjamin, 111 Conn. 297, 149 A. 687.

Conceding the defendants' argument that no technical sale by description existed in this case because the goods were in existence and on hand and their identification and specification did not depend upon the descriptive words used in the bill of sale, the record, nevertheless, shows a sale with an express warranty. As previously pointed out, there was an express affirmation of fact, both in defendants' oral representations and in the bill of sale, concerning the tools and equipment to be included in the transaction, namely that there were 6" and 8" tools. This is not controverted. Further, the buyer relied upon such affirmations, as the jury necessarily found by its verdict against the defendants. This matter of reliance by the buyer is the distinguishing point between the instant case and the cases cited by defendants. Here the buyer was not so experienced in the well-drilling business nor had he made such examinations that we can say as a matter of law that he could not justifiably rely upon the statements and affirmations of the seller.

Whatever the rule concerning the existence of implied warranties when the buyer has the opportunity and right to examine the goods, the fact that the purchaser made an actual personal examination of the goods does not necessarily void the existence of an express warranty. Gould v. Stein, 149 Mass. 570, 22 N.E. 47; Rocky Mountain Seed Co. v. Knorr, 92 Colo. 320, 20 P.2d 304; 1 Williston on Sales, 3d Ed., sec. 208. Any error committed by the lower court in granting the instruction on a sale by description in this case was not prejudicial to the defendants since the facts found here, as we have indicated, are consistent with a holding of an express warranty on the part of the defendants; therefore, the same results reached by the lower court would follow. Under the evidence the jury might have been justified in finding a sale on inspection but having decided the question adversely to the defendants, that verdict cannot now be disturbed by this court.

Defendants' contention in assignment 6 is that the court erred in injecting the matter of rescission by giving plaintiffs' fourth requested instruction to the jury. In view of the preceding discussion that the jury could justifiably find the existence of warranties in this case, it is apparent that this assignment is without merit. Upon the finding of a breach of warranty in a contract of sale, rescission by the buyer is one of the remedies available to him under section 52-578, A.C.A.1939. In reply to

defendants' contention that rescission went entirely outside the pleadings, it is necessary only to quote section 21-1203, A.C.A. 1939, which states that every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

The remainder of defendants' assignments of error, numbered 8 through 11, contain repetitions of their other assignments or concern the procedural rulings of the trial court which, in the light of the record and the foregoing discussions, however, need not be considered. The judgment, therefore, will not be disturbed.

Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD and PHELPS, JJ., concur.