399 P.2d 681

**Peter NALBANDIAN, doing business as Arrowhead Ranches, Appellant,**

**v.**

**BYRON JACKSON PUMPS, INC., a corporation, Appellee.**

**No. 7596.**

Supreme Court of Arizona.

En Banc.

March 3, 1965.

Christy, Kleinman, Peterson & Hoyt, Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, by Nicholas Udall, Phoenix, for appellee.

BERNSTEIN, Justice.

Plaintiff sued defendant for breach of an express warranty in connection with the breakdown of an electric submersible pump

sold by defendant to plaintiff's predecessor, Arrowhead Ranches, Inc. Arrowhead Ranches, Inc. was dissolved and plaintiff now operates as Nalbandian dba Arrowhead Ranches, and succeeded to certain assets, including this claim. He conducted the negotiations for the purchase of the submersible pump involved in this suit for the corporation. The complaint alleged that Arrowhead Ranches, Inc. purchased the electric submersible pump motor " * * * upon the representation and warranty made to it by the defendant that said motor was in all respects properly constructed and constructed of good materials, and that said motor was well suited for the purpose for which it was to be used, and the defendant expressly guaranteed to said Arrowhead Ranches, a corporation, that said motor would operate properly and perform the services for which it was to be used for a period of not less than one year, and that if it failed to do so, defendant would pay all repair bills thereon or replace said motor with a new one."

The case was tried by the Superior Court sitting without a jury. No findings of fact or conclusions of law were made or requested. The trial judge gave a judgment for defendant, and plaintiff has appealed.

The equipment involved was a submersible pump motor completely encased in oil, inside a metal container, sealed by the factory, and installed in the well by factory representatives. They determined the depth at which the pump would be placed. There was no opportunity for inspection, the pump operated automatically and there is no evidence that the breakdown of the pump could have been caused by improper operation or maintenance by the purchaser. The submersible pump is of a type commonly used for irrigation in Arizona, and was not unusual or experimental equipment of special design, but on the contrary, equipment commonly sold on the open market. Plaintiff ordered the submersible pump by telephone from defendant for the reason that the defendant had installed the same type of pump, which gave satisfactory service, in the same well.

Defendant's regional sales manager, called as an adverse witness, testified that defendant warranted all its products against defective workmanship or materials for a period of one year, and that this warranty applied to the particular pump sold to Arrowhead Ranches, Inc. The witness said:

"Q   By the way, you do have a warranty or guaranty on these motors, do you not?

"A   Two warranties. Any products of our manufacture against defective workmanship or materials, for a period of one year.

"Q   And that applies to this particular motor that you sold to Arrowhead Ranches, Inc., didn't it?

"A   That is correct."

Defendant's regional specialist handling mainly deep wells and submersible pumps, called as a witness by the defendant, testified:

"Q Are you acquainted with the requirements of a well the size and depth of Mr. Nalbandian's, with regard to the size of the motor and the type of motor to be used?

"A Yes.

"Q In your opinion, was the H-type motor placed in this well in 1958 suited for this particular type of a well?

"A Yes."

■ Under A.R.S. § 44–215(1) there is an implied warranty that the pump was reasonably fit for the purpose for which it was to be used. Under A.R.S. § 44–215(6) this is in addition to any express warranty which is not inconsistent. Singleton v. Dunn, 71 Ariz. 150, 224 P.2d 643; Davidson v. Wee, 93 Ariz. 191, 379 P.2d 744; Colvin v. Superior Equipment Co., 96 Ariz. 113, 392 P.2d 778.

■ Where the suit is on the contract it is necessary to show that the warranted equipment failed to operate properly during the period for which it was guaranteed. When the pump failed, both parties at first thought failure was caused by lightning. This contention was abandoned prior to trial. Defendant made the necessary repairs and replacements, at a net cost of $4,089.46, which the plaintiff paid in order to place the pump back in operation immediately. He now sues to recover.

■■ In contract, the failure of a product to be reasonably fit for the purpose for which it was to be used within the guaranteed time is all the plaintiff need prove to establish a prima facie case. The plaintiff need not prove negligence in the manufacture of the warranted product. 1 Williston, Sales § 237 (Rev.Ed.1948); Kessler, The Protection of the Consumer under Modern Sales Law, 74 Yale Law Journal 262, 272. See, Cotton, A Note on the Remedies of Injured Consumers, 1 Law & Contemporary Problems 67, 69.

■ Under the Uniform Sales Act, from which A.R.S. § 44–215 was taken, the liability of the manufacturer to consumer, where there was privity of contract, is a strict liability.

"The effect of an express warranty undoubtedly is to bind the seller absolutely for the existence of the warranted qualities. If an implied warranty is properly called a warranty, the consequences should be similar. It should make no difference, therefore, whether the seller was guilty of any fault in the matter. Such is the well-settled law of England. And either because of the enactment of the Sales Act or because of an interpretation of the com-

mon law most jurisdictions in the United States follow the English rule." (Footnotes omitted.) 1 Williston, Sales, § 237 (Rev.Ed.1948.) Quoted with approval in Patterson v. Orangeburg Fertilizer Co., 117 S.C. 140, 108 S.E. 401, 405.

■■ At the trial the judge stated that if the doctrine of res ipsa loquitur applied to this case, the judgment should be for the plaintiff. The doctrine of res ipsa loquitur does not apply to the case. Res ipsa loquitur is a rule of evidence applicable only in tort cases. Throop v. F. E. Young and Company, 94 Ariz. 146, 382 P.2d 560; Capps v. American Airlines, Inc., 81 Ariz. 232, 303 P.2d 717; Udall, Arizona Law of Evidence § 195.

■ The rule of strict liability in breach of warranty cases, however, serves the same purpose as the rule of res ipsa loquitur in negligence cases. That is, it relieves the plaintiff of the necessity of proving matters peculiarly within the knowledge of the defendant, if, indeed, they are known to anyone. Professor Williston gives this explanation of the English Rule, which under the Uniform Sales Act, in force in Arizona as A.R.S. § 44–201 et seq., is now universally applied in this country:

"The English rule may seem somewhat harsh at first sight, but on grounds of policy it is probably superior to any modification of it based upon negligence. If the buyer is compelled to contest the question of negligence with the seller, he will find it very difficult to recover. In the nature of the case the evidence will be chiefly in the control of the seller, and the expense of even endeavoring to make out a case of this sort will be prohibitive in cases involving small amounts. Moreover, if the buyer cannot recover from the seller he cannot recover from anyone for the defective character of the goods which he has bought. The wrong done by the sale of defective materials to the manufacturer who later sold the goods cannot form the basis of action by the ultimate buyer. Consequently, the real wrongdoer who has caused the ultimate injury escapes. On the other hand, if the manufacturer is held to an absolute liability irrespective of negligence, it will unquestionably increase the degree of care which he will use, and if in any case he is compelled to pay damages for breach of warranty where the real cause of the defect was inferior material which he himself innocently purchased, he will have a remedy over against the persons who sold him this inferior material, and his damages will include whatever he himself has had to pay for breach of warranty. Thus the loss will be borne ultimately by the person who should be responsible." 1 Williston, Sales § 237a

(Rev.Ed.1948), quoted with approval in Patterson v. Orangeburg Fertilizer Co., supra.

■ The defendant here was both the manufacturer and the seller of the pumps. He may be held liable as manufacturer or as seller, or as both.

In Canadian Fire Insurance Company v. Wild, 81 Ariz. 252, 254, 304 P.2d 390, 391, we said:

"This action is based upon the breach of an implied warranty as evidenced by the agreement of counsel at the conclusion of the pre-trial conference in this case. It is therefore an action ex contractu and the following quotation in Greenwood Cotton Mill v. Tolbert, 105 S.C. 273, 89 S.E. 653, 654, is applicable here:

"' * * * When the law implies a warranty as to the soundness of the commodity, it necessarily follows, in the absence of an agreement, that it cannot be defeated or rendered ineffectual to any extent by the action of the seller. And the fact that the defect in the article may have been latent and unknown to the seller, or that he may not have been guilty of negligence in ascertaining it, will not relieve him from liability, when there has been a breach of the warranty. * * *' "

"Plaintiff contends that he has established by competent evidence two defects in the refrigerating unit; primarily that the fuse plug was defective in that it failed to function, * * *."

The fact situation in Canadian is strikingly similar to that in this case. The evidence in Canadian was merely that the fuse plug failed to function, but the court held that that was sufficient to require a reversal of a judgment for defendant. In the instant case the pump failed to function. See also Fraley v. Ford, 81 Ariz. 268, 304 P.2d 1068.

In his brief the defendant concedes: "There was no evidence whatsoever as to what the defect was; the only evidence was that there was a failure of the motor and a report of the damage to it."

■ Defendant in his argument stresses the fact that the plaintiff's theory is one of express oral warranty, as stated by his counsel at the trial. The implied warranty, however, is preserved by A.R.S. § 44-215(6) unless it is inconsistent with the express warranty. We find no inconsistency between a warranty of workmanship and materials, and a warranty that an article is fit for the purpose for which it was purchased. Under the Uniform Act it has been held that where there is an express warranty, the implied warranties are merged therein and survive unless ex-

pressly made inapplicable. Warren Co. v. Exodus, 114 Ind.App. 651, 54 N.E.2d 775.

■ Defendant also contends that it was not shown that plaintiff relied on the warranty. In Vitro Corp. of America v. Texas Vitrified Supply Co., 71 N.M. 95, 376 P.2d 41, 48, the court said:

"The statements of Snow, that he purchased for Ruidoso on the strength of his previous 'experience' and that he did not rely on any warranties or representations made 'at the time' of that purchase, do not rule out the reasonable inference which could be drawn from all the circumstances that one of the material inducements for the purchase was the knowledge possessed by Snow of the warranties made to him by Ward on the previous purchase. These warranties constituted a part of his previous 'experience' with the pipe at Grants. "It is not necessary that a buyer prove reliance on a warranty by direct evidence. * * *"

* * * * * *

"It has never been contended, to our knowledge, that a buyer must prove reliance on the skill or judgment of the manufacturer in order that he may recover for the breach of an implied warranty of merchantability. The warranty is implied because the manufacturer holds himself out as being skilled in the construction of his prod-ucts and as being able to manufacture them without latent defects in materials or workmanship. The reasons for the evolution of the implied warranty as applied to manufacturers as distinguished from other sellers are so well and clearly stated in Kellogg Bridge Company v. Hamilton, 110 U.S. 108, 3 S.Ct. 537, 28 L.Ed. 86, that we quote from the opinion rather than attempt a restatement:

" 'The authorities to which we have referred, although differing in the form of stating the qualifications and limitations of the general rule, yet indicate with reasonable certainty the substantial grounds upon which the doctrine of implied warranty has been made to rest. According to the principles of decided cases, and upon clear grounds of justice, the fundamental inquiry must always be whether, under the circumstances of the particular case, the buyer had the right to rely and necessarily relied on the judgment of the seller and not upon his own. * *' "

Expert testimony was introduced that sand might have caused damage of the type which this pump suffered. No direct evidence, however, was presented that there was an undue amount of sand in this well. It is immaterial, whether sand was present in the well. Defendant made the installation. He knew the well having installed

the pump previously used. Defendant also determined the level at which the pump was installed. We do not have a case in which a purchaser installed a good pump in a sandy well, but a case where the purchaser relied on the seller to pick a pump suited to the conditions in his well and to install it properly.

Since this case was tried by a judge without a jury, " * * * if we can on any reasonable view of the evidence deduce therefrom facts which, on any theory of the law, would sustain the judgment, we must affirm it." Babbitt & Cowden Livestock Co. v. Hooker, 28 Ariz. 263, 266, 236 P. 722, 723; Colvin v. Superior Equipment, supra. But here there is no evidence in the record which would sustain a judgment for the defendant.

Defendant's counterclaim is admitted. Judgment is directed to be entered for plaintiff in the amount of $4,089.46, less the amount of the counterclaim.

Reversed and remanded for further proceedings as directed in this decision.

STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concurring.

LOCKWOOD, Chief Justice (concurring):

I concur in the conclusion reached by the majority of this Court that this case should be reversed and remanded for further proceedings. However, the conclusion of the majority is based upon the theory of statutory implied warranty. In the recent case of Colvin v. Superior Equipment Company, 96 Ariz. 113, 392 P.2d 778 (1964), this Court adopted the modern legal concept of a manufacturer's strict liability in tort with regard to its manufactured products. This action was brought by the plaintiff against the defendant for breach of warranty. A study of the complaint demonstrates that it was brought either ex contractu or in tort. The gravamen of that complaint was a breach of warranty.

I am concerned lest the readers of the majority opinion interpret that opinion to be a modification of that doctrine adopted in the Colvin case. Thus I would point out that the majority cites the Colvin case as good law albeit in support of a legal point which does not reach the heart of the problem with which we are here concerned.

In the Colvin case, supra, we adopted Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963). We quoted from that case as follows:

" ' * * * Implicit in the machine's presence on the market, however, was

a representation that it would safely do the jobs for which it was built. Under these circumstances, it should not be controlling whether plaintiff selected the machine because of the statements in the brochure, or because of the machine's own appearance of excellence that belied the defect lurking beneath the surface, or because he merely assumed that it would safely do the jobs it was built to do. * * * To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware and that made the Shopsmith unsafe for its intended use.' " 96 Ariz. at 118–119, 392 P.2d at 781–782.

In the Greenman case, supra, the Supreme Court of California also said:

"A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." 59 Cal.2d at 62, 27 Cal.Rptr. at 700, 377 P.2d at 900.

That court also said:

" * * * strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that *the liability is not assumed by agreement but imposed by law* [citations], *and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products* [citations] *make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort.* * * * The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. Sales warranties serve this purpose fitfully at best. * * * Implicit in the machine's presence on the market * * * was a representation that it would safely do the jobs for which it was built." 59 Cal.2d at 63–64, 27 Cal.Rptr. at 701, 377 P.2d at 901. (Emphasis supplied.)

The Greenman case concluded:

"To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in

design and manufacture of which plaintiff was not aware that made the Shopsmith unsafe for its intended use." 59 Cal.2d at 64, 27 Cal.Rptr. at 701, 377 P.2d at 901.

We held in Colvin, supra, that the same rationale is to be applied whether we are concerned with an injured man "as the foundation of accident liability, or by the purchaser to avoid a contract." 96 Ariz. at 119, 392 P.2d at 782. Indeed the same rationale is applicable in a situation such as this where the plaintiff has brought an action to recover monies paid to the manufacturer to repair its defective product.

It is to be noted here that there is no controversy over the fact that the defendant supplied and installed the motor and that the defendant had supplied the plaintiff with pumps and motors previous to the one here in question and was aware of the uses to which the motor was to be put. The defendants herein had a duty to provide a pump and motor fit for the purpose for which it was intended and the plaintiff had the right to rely thereon. Mack v. Hugh W. Comstock Associates, Inc., 37 Cal.Rptr. 466 (Dist.Ct.App.1964).

Had the court below applied the doctrine of strict liability in tort which this Court has adopted, it would have been required to find for the plaintiff.