430 P.2d 701

O. S. STAPLEY COMPANY, an Arizona corporation, Seth Smith Boat Works, Inc., an Arizona corporation, American Chain and Cable Company, a New York corporation, Appellants and Cross-Appellees,

v.

Elizabeth (Hartzell) MILLER, a/k/a Elizabeth Miller Proulx, Appellee and Cross-Appellant,

and

O. S. Stapley, an Arizona corporation, Seth Smith Boat Works, Inc., an Arizona corporation, American Chain and Cable Company, a New York corporation, Appellees and Cross-Appellants.

No. 1 CA–CIV 300.

Court of Appeals of Arizona.

July 27, 1967.

Rehearing Denied Sept. 1, 1967.

Review Denied Oct. 17, 1967.

On Reconsideration, Review Granted Oct. 31, 1967.

---

Fennemore, Craig, Allen & McClennen, by Philip E. von Ammon and Linwood Perkins, Jr., Phoenix, for appellant American Chain & Cable Co.

Snell & Wilmer, by Arthur P. Greenfield and Roger W. Perry, Phoenix, for appellant-appellee O. S. Stapley Co.

Moore, Romley, Kaplan, Robbins & Green, by Robert H. Green and Kenneth J. Sherk, Phoenix, for appellant-appellee Seth Smith Boat Works, Inc.

Langerman, Begam & Lewis, by Samuel Langerman and Robert D. Myers, Phoenix, for Elizabeth Miller Proulx, appellee and cross-appellant.

CAMERON, Chief Judge.

This is a "products liability" or "strict tort liability" case in which the plaintiff brought suit against the manufacturer, seller, and installer of a steering mechanism for a boat and outboard motor. The plaintiff also brought suit against Leo Villalpondo, the driver of the boat, at the time she was injured, but her claim against the said driver was settled prior to trial and is not a part of this appeal.

Trial was held before a jury and at the conclusion of all evidence the court directed a verdict on the issue of liability for the plaintiff against all three defendants, and granted the motion of O. S. Stapley for judgment over against Seth Smith and granted the motions of Seth Smith and O. S. Stapley Company for judgment over against defendant American Chain and

Cable Company. Judgment was rendered by the jury in the amount of $175,000. Defendant American Chain appeals the granting of the motion for directed verdict and the granting of the motions for judgment over against American Chain. American Chain also appeals from the refusal of the court to submit the issue of contributory negligence to the jury. Defendants O. S. Stapley and Seth Smith had cross-claimed against American Chain and after judgment filed a statement of costs against American Chain. From the order of the court sustaining American Chain's objection to part of the costs O. S. Stapley and Seth Smith appeal.

We are called upon to determine:

1. Whether the doctrine of "products liability" or "strict tort liability" applies in the State of Arizona and, if so, in the instant case.

2. Whether the court erred in granting the motions of the seller and installer for judgment over against the manufacturer.

3. Whether the doctrine of contributory negligence applies in a products liability case.

4. Whether the court erred in sustaining American Chain's objection to the statement of costs of Seth Smith and O. S. Stapley.

Our Supreme Court has stated :

"It is well settled that upon appeal from a directed verdict, the evidence will be viewed in the light most favorable to the appellant; whatever competent evidence appellants have introduced, including all inferences that can be reasonably drawn therefrom, is assumed to be true; and if the evidence is of such character that reasonable minds may differ on the inferences to be drawn therefrom, the case must be submitted to the jury. Sturm v. Heim, 95 Ariz. 300, 389 P.2d 702." Heth v. Del Webb's Highway Inn, 102 Ariz. 330, 429 P.2d 442, filed 22 June 1967.

The facts viewed in the light indicated by our Supreme Court are as follows. In March of 1960 one Harry Hartzell purchased from the O. S. Stapley Company a Glasspar G-3 boat hull. Although the testimony of Robert B. Stapley, the employee of O. S. Stapley Company, was to the effect that the recommended horsepower limitation on the boat purchased was a maximum of 60 horsepower, the purchaser Harry Hartzell insisted upon putting a 75 horsepower outboard motor on the hull. The testimony indicates that both Johnson and Evinrude had, in the fall of 1959, brought on the market a new 75 horsepower outboard motor. The maximum horsepower motor produced by Evinrude or Johnson prior to this time had been 50 horsepower.

Robert Stapley and Harry Hartzell then went to defendant Seth Smith Boat Works, Inc. and purchased a SteerMaster guidance assembly and Number RCA 116 Tiller Kit. The SteerMaster and the RCA 116 Tiller Kit was and is manufactured by the defendant American Chain. The SteerMaster Tiller Kit number RCA 116, upon its envelope, indicates that it is manufactured for a Johnson or Evinrude 35 horsepower or 50 horsepower motor and the instructions in the kit indicate different attaching points when a 35 horsepower motor or 50 horsepower motor is used. Robert Stapley and Harry Hartzell modified the RCA 116 Tiller Kit so that it could be used with the 75 horsepower motor.

The SteerMaster unit is designed to turn the outboard motor which is placed at the rear of the hull so that the motor acts as a rudder for the boat. Because it is necessary at times to tip the outboard motor to a horizontal position, as for example when the boat is being pulled on a trailer or because it strikes an object in the water, the motor itself is connected to the steering unit by means of an item (in the tiller kit) called a "quick-disconnect". This is a ball and socket joint held in place by a sleeve under pressure of a coiled spring. Whenever the motor must be tipped the sleeve is pushed back against the spring and the ball comes

out of the socket. The quick-disconnect unit in question had a socket which was drilled completely through so that the socket was a hole rather than a socket itself. The testimony of the representative of American Chain was to the effect that this was done sometime after the quick-disconnect unit left the manufacturer and was not done by American Chain.

In April of 1960 with the use of the then new 75 horsepower Johnson or Evinrude motor American Chain marketed an RCA 188 and RCA 191 SteerMaster Tiller Kit. The testimony was to the effect that the RCA 188 was the tiller kit designed by American Chain for a Johnson or Evinrude 75 horsepower motor and that the RCA 191 was a modification to be used with the 116 Tiller Kit in modifying the SteerMaster unit for use with a 75 horsepower motor. Although the testimony is ample that Mr. Smith of Seth Smith Boat Works, Inc. knew that Hartzell was using a 75 horsepower motor with an RCA 116 Tiller Kit, no effort was made in April, 1960, to notify or contact Mr. Hartzell of the new kit.

Robert Stapley physically altered the transom clamp and bracket in order to make the steering work properly. Hartzell and Stapley tested the boat on several occasions, and after delivery to Hartzell the boat was used for water-skiing in and around the Phoenix area on several occasions with no problem or malfunction. When water-skiing, the tow line (or lines) was attached by way of a "bridle" to the end or rear of the boat hull on both sides of the outboard motor. The bridle joined behind the motor and the lines were so attached that they not only touched the motor housing during operation but could come into contact with the "quick-disconnect unit".

On 22 August 1960 Hartzell, defendant Villalpondo, plaintiff, and others were water-skiing on a lake near Phoenix. The plaintiff was seated on the dash or front deck of the boat in which position the defendant, Villalpondo, testified:

"Q It's your testimony, however, you did suggest she remove herself from the position which she occupied?

"A Yes, sir.

"Q That was not a safe position, was it?

"A No, I don't believe it was.

"Q In your judgment, she would have been well advised to have settled herself in the seat, isn't that right?

"A Yes, sir.

"Q In fact, there was room where she could have settled herself in the seat; is that not right?

"A Yes, sir, there was."

The boat and skiiers had been in operation for about an hour when the accident occurred. The boat was going ahead at about 25 miles per hour. The boat suddenly swerved, the plaintiff fell from the boat, and the propeller cut and seriously injured the plaintiff's foot. After the accident it was observed that the "quick-disconnect" was disconnected which would have allowed the motor to suddenly turn and swerve the boat. The testimony of the expert for the plaintiff was that the probable cause of the disconnection and the accident was the ski bridle tow coming in contact with the quick-disconnect link. The expert also testified under cross-examination:

"By Mr. Beshears

"Q Mr. Blewett, as I understand it, then, in this extension which is provided by American Chain and Cable Company in their 191 and 188 Tiller Kits, if that had been inserted on the boat, then the accident could not have happened merely by virtue of the skiiers being pulled, is that right?

"A Yes, sir. Under the hypothetical conditions given me, and assuming other things being equal, that's absolutely true.

"Q By virtue of the fact that that extension was not put on the connection, according to your opinion,

the accident was enabled to happen, is that right, sir?

"A Well, working back the other way, I would have to say yes."

The trial court denied the defendants' request for instructions on contributory negligence, directed a verdict as to liability for the plaintiff against all three defendants, and granted the defendant Seth Smith and O. S. Stapley Company's motion for judgment over against American Chain for any judgment returned. The court, after the jury verdict, sustained American Chain's objection to the statement of costs filed by Seth Smith and O. S. Stapley Company against American Chain, and all parties except the plaintiff appealed.

## DOES THE DOCTRINE OF "PRODUCTS LIABILITY" OR "STRICT TORT LIABILITY" OBTAIN IN ARIZONA AND DOES IT APPLY TO THE FACTS IN THIS CASE?

At oral arguments before this Court all parties conceded that the doctrine of "products liability" or "strict tort liability" applies regardless of privity on the manufacturer in a case where there is no contractual relation between the purchaser and the manufacturer. "Products liability" or "strict tort liability" is distinguished from implied warranty where privity is generally required. See "Arizona: A Move Toward Strict Products Liability", James M. Sakrison, 7 Arizona Law Review 263 (1966). At least one Justice of the Supreme Court of the State of Arizona has indicated in a concurring opinion that Arizona follows this doctrine:

"In the recent case of Colvin v. Superior Equipment Company, 96 Ariz. 113, 392 P.2d 778 (1964), this Court adopted the modern legal concept of a manufacturer's strict liability in tort with regard to its manufactured products." Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 287, 399 P.2d 681 (1965).

We are not, however, convinced that the Arizona Supreme Court has made a defi-

nite determination adopting the doctrine of "strict tort liability". There have been, however, enough cases decided by the Arizona Supreme Court which indicate to us that if they were called upon at this time to adopt the doctrine of strict tort liability they would do so. Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094 (1957); Nalbandian v. Byron Jackson, supra; Colvin v. Superior Equipment Co., op. cit.; Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732 (1966). We therefore hold that "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being", Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 700, 377 P.2d 897, 900 (1962), and this liability applies regardless of privity on a manufacturer in a case where the user was not the purchaser. Vandermark v. Ford Motor Company, 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964).

We must next consider whether the doctrine of strict tort liability applies to the case at bar. In a recent Connecticut case the court stated:

"* * * Several conditions precedent to a seller's liability are noted in Section 402A of the Restatement (Second) of Torts, and the plaintiff must at least allege and prove facts bringing himself within the requirements of that section. These include not only allegations that the defendant sold the product, that it was in a defective condition unreasonably dangerous to the user or consumer or to his property, that it caused physical harm to the consumer or user or to his property (citations omitted), and that the seller was engaged in the business of selling such a product but also that the product was expected to and did reach the user or consumer without substantial change in the condition in which it was sold. (citations omitted) This latter essential allegation may well be of great

significance in such circumstances as those which gave rise to the instant case where the product passed through several hands and eventually came into the possession of the plaintiff as part of the used, secondhand machine. * * *

"Since the present complaint contained no allegation that the product of either Avco or Eaton was expected to and did reach the plaintiff without substantial change in the condition in which it was sold by either of them, it lacks an allegation which is essential to the statement of a good cause of action based on strict tort product liability." Rossignol v. Danbury School of Aeronautics, Conn., 227 A.2d 418, 424 (1967).

We are not concerned herein with the pleading aspects of the Connecticut case. We are, however, concerned with the evidence presented and offered viewed in a light most favorable to American Chain. The evidence indicates that the product had been modified after manufacture by American Chain. It is apparent that the manufactured product did not reach the consumer or user in substantially the same condition that it left the manufacturer. Under these circumstances unless it can be determined by the trier of fact that this alteration was not material to the accident, the defendant American Chain would not be liable. Whenever it is shown that the product has been altered or changed between the manufacturer and the consumer, it becomes the responsibility of the party attempting to hold the manufacturer to strict tort products liability to show that the alteration or change had no material effect on the accident or injury, and this is a fact question to be decided by the jury under the facts presented in this case. We hold, therefore, that it was error to direct a verdict for the plaintiff against American Chain on strict tort liability.

 But there is another reason why it was error to direct a verdict for the plaintiff against American Chain on the basis of strict tort liability. When a manufacturer markets a product for a specific purpose and the product is used for a purpose not reasonably anticipated by the manufacturer, the manufacturer should not be held to strict tort liability. It is immaterial that an intermediate distributor recommended its use for a purpose other than the one contemplated by the manufacturer. As to that intermediate seller, he may be liable for negligently recommending the product for a specific use even though the manufacturer may not be liable. The product must be used for a purpose and in a way it was intended to be used which the manufacturer in the exercise of reasonable prudence would expect that it would be used. We do not believe it too great a burden upon a party attempting to hold a manufacturer to strict tort liability to have the burden of showing to the trier of fact that there has been no material alteration in the product between manufacturer and user and that the product was used in a manner and for a purpose to be reasonably expected by the said manufacturer:

"While this court does not believe that a label placed upon a cause of action has any great significance, it does believe that theories of liability still have substance, and that the instant case particularly points up that substance. In order to make one man liable for another's injury, there must be some valid reason for so doing. This reason, or theory of liability, may very well determine what injury has resulted from the wrong committed. A person should be liable for no more than the injury caused by his wrong." Shetter v. Rochelle, 2 Ariz.App. 358, 366, 409 P.2d 74, 82 (1965). Modified for other reasons 2 Ariz.App. 607, 411 P.2d 45 (1966).

## THE QUESTION OF THE JUDGMENT OVER AGAINST THE MANUFACTURER FROM THE INTERMEDIATE SELLERS OF THE PRODUCT

Defendant American Chain also contends that it was error for the court to grant defendants Seth Smith and O. S. Stapley Company's motion for judgment over

against American Chain. With this we must agree.

▮ The evidence is ample to show that the defendant Seth Smith may well have been negligent himself in providing the particular tiller kit for installation on the 75 horsepower motor. This is a fact question for the jury. The evidence is also ample to indicate that the actual installation was made by the defendant O. S. Stapley Company. Whether or not this contributed to the accident is a fact question for the jury. The alteration of the socket, modification of the transom clamp, and changing and using of the RCA 116 Tiller Kit are fact questions to be determined by the jury, and if they are one of the legal causes of the accident, the defendants Seth Smith and O. S. Stapley Company may not escape the effects of the judgment. Our Supreme Court has recently stated:

> "The liability of a manufacturer of an article is in tort, (see Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P.2d 732, and concurring opinion of Justice Lockwood in Nalbandian v. Byron Jackson Pumps, 97 Ariz. 280, 399 P.2d 681), and it is not assumed by agreement but imposed by law. Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094." Shannon v. Butler Homes, 102 Ariz. 312, 428 P.2d 990, filed 14 June 1967.

Where the product is unaltered from manufacturer to consumer, sold, and used for purposes reasonably contemplated by the manufacturer, then the intermediate sellers may properly have a judgment over against the manufacturer of the product because the negligence of the intermediate seller is only imputed or constructive and the manufacturer is the active or primary tort-feasor. Busy Bee Buffet v. Ferrell, 82 Ariz. 192, 310 P.2d 817 (1957). But where both the manufacturer and one or more of the intermediate sellers may be guilty of negligence, each act of which amounts to legal causation, they may be equally liable. In Arizona there is no contribution among joint tort-feasors, and there would be no right of indemnification. Blakely Oil v. Crowder, 80 Ariz. 72, 292 P.2d 842 (1956).

## INSTRUCTIONS ON CONTRIBUTORY NEGLIGENCE

▮ The appellant next contends that the trial court committed error in refusing to instruct on contributory negligence. The plaintiff positioned herself on the front of the deck or dashboard of the boat in a position in which she had been advised not to place herself, and whether this contributed to her injuries is a fact question for the jury. The doctrine of contributory negligence applies not only to a situation wherein the alleged contributory negligence of the plaintiff in some way contributes to the cause of the accident itself, but also to those situations wherein, although the negligence of the plaintiff may not have in any way added to or contributed to the accident, does add to or contribute to the injuries that have resulted from the accident. MacDonald v. Eichenauer, 77 Ariz. 252, 269 P.2d 1057 (1954). In the instant case had the plaintiff remained seated in the boat it is possible that she would not have been thrown therefrom. Since our Court has stated that products liability sounds in tort, Shannon v. Butler Homes, supra, the defendants would be entitled to an instruction on contributory negligence. A recent A.L.R. citation has stated as follows:

> "Contributory negligence and assumption of risk are generally considered to be doctrines of the law of torts. Actions for alleged breach of implied warranty are often held to be part of the law of contracts. However, such actions were formerly regarded as sounding in tort, and they retained certain aspects of the law of torts. Moreover, it frequently occurs that a given set of facts could support either an action for a breach of implied warranty or an action for negligence. Hence, the question arises whether the defense of contributory neg-

**130**

ligence and assumption of risk may be properly asserted in actions for breach of implied warranty." 4 A.L.R.3rd 502, paragraph 1.

The states are divided as to whether the doctrine of contributory negligence can be applied in a suit for strict tort liability. This State having decided the liability of a manufacturer of an article is in tort, Shannon v. Butler Homes, supra, rather than a part of the law of contracts, we have no difficulty in determining that contributory negligence is a defense in a strict tort liability action.

## OFFERED TESTIMONY OF TWO EXPERT WITNESSES

 American Chain offered during the trial the testimony of two expert witnesses: Ellis, a local boat builder with a background in engineering, and Strang, a mechanical engineer who does consulting work primarily in the marine field and has had extensive background in outboard motor engineering, manufacturing, and testing. American Chain was denied permission to introduce the testimony of the two experts on the grounds that their existence was not revealed in American Chain's answer to interrogatories or made known prior to trial in accordance with the pretrial order. It is the contention of the appellant that the defensive matter upon which the experts would testify did not come to light either to the plaintiff or to American Chain until the trial was in progress and a reading of the transcript would indicate this to be the case. Much of the testimony defendant American Chain intended to rebut, as indicated in its offer of proof, was testimony which was elicited from plaintiff's expert witness. While the rule is generally that the court may limit the number of expert witnesses by pretrial order, when an expert witness has testified on one side, we feel that the order may be modified at the trial to prevent manifest injustice. Harbel Oil Company v. Steele, 1 Ariz.App. 315, 402 P.2d 436, 439 (1965). Inasmuch as we have already reversed this

matter for new trial, appellants will have the opportunity of notifying plaintiff of these witnesses and American Chain's intention to call them at the new trial.

## QUESTION OF ALLOWANCE OF COSTS

 After judgment the plaintiff filed a statement of costs relative to all of the defendants. Defendant Stapley filed a statement of costs against Seth Smith and American Chain which included the amount as plaintiff's claim, and Seth Smith filed a statement of costs against American Chain which included claims by plaintiff and Stapley as well as the jury assessment. At hearing on the objections to the statement of costs the trial court sustained American Chain's objections with respect to cost of depositions and jury fees being the amount of $1,786.94 out of a total claim of $2,279.00. The Arizona Rules of Civil Procedure state as follows:

"Except when express provision thereof is made either in a statute or in these Rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs. * * *" Rule 54 (f), Rules of Civil Procedure, 16 A.R.S.

This Court has stated:

"Under Rule 54(f), supra, the imposition of costs is a matter within the trial court's discretion, (citations) and any doubt concerning the discretion of the court to assess costs incident to trial should be resolved in favor of such discretion. (citation)." Hurst v. Hurst, 1 Ariz.App. 227, 233, 401 P.2d 232 (1965). Modified for other reasons, 1 Ariz.App. 603, 405 P.2d 913 (1965).

We would have no difficulty in affirming taxation of costs to the prevailing party including costs of taking depositions taken in good faith even though not used at the trial. White v. Frye, 27 Ariz. 447, 234 P. 34 (1925), A.R.S. §§ 12–332, 12–341, 12–346. In absence of a clear abuse of the court's discretion we will not find error in

the court's taxation of costs in the instant case.

Reversed and remanded for new trial.

DONOFRIO and STEVENS, JJ., concur.