984 P.2d 534

Fred STOECKER and Hildegard E. Stoecker, husband and wife, Plaintiffs/Appellants,

v.

BRUSH WELLMAN, INC., a foreign corporation; Jordan Frazier and Jane Doe Frazier, husband and wife; Snowden A. Moyer and Jane Doe Moyer, husband and wife; Derrick Schull and Jane Doe Schull, husband and wife; Bud Foster and Jane Doe Foster, husband and wife, Defendants/Appellees.

Armando C. Cruz and Ursula Cruz, husband and wife, Plaintiffs/Appellants,

v.

Brush Wellman, Inc., a foreign corporation, Defendant/Appellee.

Albert Flores and Norma P. Flores, husband and wife, Plaintiffs/Appellants,

v.

Brush Wellman, Inc., a foreign corporation, Defendant/Appellee.

Luis C. Maldonado and Rosa O. Maldonado, husband and wife, Plaintiffs/Appellants,

v.

Brush Wellman, Inc., a foreign corporation, Defendant/Appellee.

Robert Kofira and Leanne Kofira, husband and wife, Plaintiffs/Appellants,

v.

Brush Wellman, Inc., a foreign corporation, Defendant/Appellee.

Javier Fimbres and Sylvia Fimbres, husband and wife, Plaintiffs/Appellants,

v.

Brush Wellman, Inc., a foreign corporation; Jordan Frazier and Jane Doe Frazier, husband and wife; Snowden A. Moyer and Jane Doe Moyer, husband and wife; Derrick Schull and Jane Doe Schull, husband and wife; Bud Foster and Jane Doe Foster, husband and wife, Defendants/Appellees.

Michael D. Matulin and Shelly Matulin, husband and wife, Plaintiffs/Appellants,

v.

Brush Wellman, Inc., a foreign corporation; Jordan Frazier and Jane Doe Frazier, husband and wife; Snowden A. Moyer and Jane Doe Moyer, husband and wife; Derrick Schull and Jane Doe Schull, husband and wife, Defendants/Appellees.

Lee Ann Haynes–Kern and Ronald Kern, wife and husband, Plaintiffs/Appellants,

v.

Brush Wellman, Inc., a foreign corporation; Snowden A. Moyer and Jane Doe Moyer, husband and wife, Defendant/Appellees.

No. CV–98–0361–PR.

Supreme Court of Arizona, En Banc.

July 1, 1999.

James G. Heckbert, Steamboat Springs, Colorado, Winton Woods, Jr. and Dickerson, Butler & Rodriguez, P.C. By: J. Patrick Butler, Tucson, Attorneys for Plaintiffs/Appellants.

Rusing & Lopez, P.L.L.C. By: Michael J. Rusing, Cynthia J. Kuhn, Tucson, and Downey & Knickrehm By: Thomas E. Downey, Jr., Kate E. Knickrehm, Denver, Colorado, Attorneys for Defendant/Appellee Brush Wellman, Inc. and Jones, Day, Reavis & Pogue By: Jeffery D. Ubersax, Janet L. Miller, Cleveland, Ohio, of Counsel for Defendant/Appellee Brush Wellman, Inc.

Chandler, Tullar, Udall & Redhair By: Dwight M. Whitley, Jr., Tucson, Attorneys for Defendants/Appellees Frazier, Moyer, Schull, and Foster.

**O P I N I O N**

FELDMAN, Justice.

¶ 1 We granted review to determine whether the exclusivity provision of the workers' compensation law bars employees' claims that their employer breached a contract to supplement workers' compensation benefits. We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3).

**FACTS AND PROCEDURAL HISTORY**

¶ 2 Nine former and present employees (Plaintiffs) of Brush Wellman, Inc., contracted chronic beryllium disease (CBD), a severe, progressive, and permanent lung condition, as a result of their exposure to toxic levels of airborne beryllium dust while working at Brush Wellman's Tucson plant. Although only a small fraction of the population develops CBD as a result of beryllium exposure, no available testing method exists to determine whether a particular individual may be susceptible. A Brush Wellman executive testified at deposition that approximately five percent of Brush Wellman employees exposed to beryllium develop CBD. Plaintiffs allege that Brush Wellman knew its employees would be exposed and that some would contract CBD and therefore promised its employees that it would take care of them by supplementing their workers' compensation benefits to keep their salaries at the level earned before they contracted CBD. Thus, when one of Brush Wellman's employees was diagnosed as having CBD, a corporate representative and the diagnosed employee signed a form that specifically detailed what Brush Wellman would pay the employee as an income supplement:

> The Company recognizes a medical determination that *(employee with CBD)* has contracted a beryllium-related disease as a result of his employment with the Company. Our policy is that this employee shall be guaranteed an income at least equal to the highest rate of pay at the time or subsequent to, the diagnosis of [CBD]. This guarantee shall remain in effect until the employee reaches normal retirement age, or recovers from [CBD].

Brush Wellman also issued a policy statement:

> Special provision is made for employees who, in the course of employment with the company, contract [CBD], and consequently become partially or totally disabled. Continued performance in a job which they are able to perform will be encouraged. Such employees shall not suffer reduction

in cash income or employee benefits as a result of their disability. . . . The company will supplement any income received through . . . Workers' Compensation . . . so that total income is equal to the employee's straight time income as of the last day worked. Pay will continue until the employee . . . becomes eligible for normal retirement benefits under the Company's Pension Plan.

¶ 3 Plaintiffs argue that this policy was part of their contract with Brush Wellman when each was diagnosed with CBD between 1991 and 1994. All received workers' compensation benefits but not the income supplement.

¶ 4 Plaintiffs' complaint contained a count for breach of employment contract and tort counts alleging intentional injury and breach of the covenant of good faith and fair dealing. Brush Wellman moved for summary judgment on all counts, arguing that the contract claims were barred by the exclusivity provision of the workers' compensation law, that Plaintiffs failed to state a claim for intentional injury, and that under the facts of the case, Arizona does not recognize a claim for breach of the covenant of good faith and fair dealing. Without explanation, the trial court granted Brush Wellman's motion on all counts.

¶ 5 The court of appeals affirmed on all but the intentional injury issue. (*Stoecker v. Brush Wellman, Inc.*, No. 2 CA–CV 96–0293 (memorandum decision, March 31, 1998)). The court found that Plaintiffs alleged sufficient facts to state a claim that Brush Wellman acted knowingly and intentionally. Mem. dec. at ¶ 7. Despite Plaintiffs' contention that a two-year statute of limitations for common-law claims should apply, the court held that a one-year statute of limitations applies to the intentional injury doctrine, a statutory cause of action. Mem. dec. at ¶¶ 8–9. Because of factual questions pertaining to the discovery rule, the court remanded the statute of limitations issue to the trial court. Mem. dec. at ¶¶ 10–12.

¶ 6 The court also affirmed summary judgment on the contract claims, concluding the claims were barred by A.R.S. § 23–1024, which provides that workers' compensation benefits shall be the exclusive remedy for an employee injured in the course and scope of employment.[1] Mem. dec. at ¶ 5. Because Plaintiffs failed to reject workers' compensation prior to injury, as required by A.R.S. § 23–906, and in fact received compensation benefits, the court found their claim was barred by § 23–1024's exclusivity provisions. Plaintiffs sought and we granted review of the court of appeals' affirmance of summary judgment on the breach of contract count. Because of the procedural posture of the case, we take the facts in the light most favorable to Plaintiffs and assume the truth of Plaintiffs' allegations respecting their contracts with Brush Wellman. *See Doe v. Roe*, 191 Ariz. 313, 324, 955 P.2d 951, 962 (1998).

## DISCUSSION

¶ 7 The Arizona Constitution requires the legislature to adopt a workers' compensation system designed to provide compensation for accidental injuries arising out of the course of employment. *See* Ariz. Const., art. XVIII, § 8. The legislature has created a statutory scheme implementing this constitutional mandate. *See* A.R.S. §§ 23–901 to 23–1091 (the Act). The Act includes an exclusivity provision that any employee "who accepts compensation waives the right to exercise any option to institute proceedings in court against his employer." A.R.S. § 23–1024(A).

■ ¶ 8 Our constitution also prohibits the legislature from abrogating the right "to recover damages for injuries" or limiting the "amount recovered." Ariz. Const., art. XVIII, § 6. The two constitutional provisions are complementary. *Kilpatrick v. Su-*

---

1. A.R.S. § 23–1024 provides:

   A. An employee, or his legal representative in event death results, who accepts compensation waives the right to exercise any option to institute proceedings in court against his employer or any co-employee acting within the scope of his employment, or against the em-

   ployer's workers' compensation insurance carrier or administrative service representative.

   B. An employee, or his legal representative in event death results, who exercises any option to institute a proceeding in court against his employer waives any right to compensation.

*perior Court,* 105 Ariz. 413, 419, 466 P.2d 18, 24 (1970). Thus, when an injury falls within the scope of the compensation law, the legislature may abrogate the right of action for tort recovery by a worker who elected to accept compensation. *Id.; see also Anderson v. Industrial Comm'n,* 147 Ariz. 456, 461, 711 P.2d 595, 600 (1985).

¶ 9　The court of appeals agreed with Plaintiffs that § 23–1024(A) does not "encompass [ ] all common law remedies against the employer" but held that an employee's "acceptance of workers' compensation benefits waives all remedies ... except for those remedies [such as the tort action for intentional injury] created or protected by the Arizona Constitution." Mem. dec. at ¶ 4 (citing *Anderson,* 147 Ariz. 456, 711 P.2d 595.) Consequently, Plaintiffs' contract claim was barred. We disagree, believing the court's characterization of the exclusivity rule is too broad. *Anderson* dealt with an employee's tort claim seeking recovery for an industrial injury. Claims that do not fall within the scope of the workers' compensation statute are not barred by its exclusivity provision. *See Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580 (1987).

¶ 10　Our courts have always recognized that various actions, including some tort actions, survive for workers whose claims are not within the scope of the compensation scheme. *See, e.g., Ford,* 153 Ariz. at 44, 734 P.2d at 586 (employee's action against employer for intentional infliction of emotional distress not barred); *Franks v. U.S. Fidelity & Guar. Co.,* 149 Ariz. 291, 718 P.2d 193 (App.1985) (employee's bad faith action against employer's compensation carrier not barred because exclusivity doctrine applies only to injuries covered by Act). Thus, we have never construed the exclusivity statute—as did the court of appeals—so broadly as to preclude all claims except those specifically protected by the constitution. The claims precluded are those in which the wrong alleged *and* the damages sought are within the Act's coverage. *Kilpatrick,* 105 Ariz. at 419, 466 P.2d at 24 (claims against

co-employees not precluded under then-existing version of art. XVIII, § 8).

**A.　Does a promise to supplement workers' compensation benefits fall within the scope of the Act?**

**1.　Scope of the Act**

¶ 11　The underlying principle of the compensation system is a trade of tort rights for an expeditious, no-fault method by which an employee can receive compensation for accidental injuries sustained in work-related accidents. *See Pressley v. Industrial Comm'n,* 73 Ariz. 22, 236 P.2d 1011 (1951). Because of this policy, § 23–1024's bar against an employee instituting court proceedings does not run afoul of the non-abrogation clause when applied to a covered employee's common-law tort action against an employer. *See Anderson,* 147 Ariz. at 457, 711 P.2d at 596 ("[A] covered worker may choose between the compensation system and the tort system."); *see also Connors v. Parsons,* 169 Ariz. 247, 818 P.2d 232 (App.1991) (holding an injured worker's intentional acceptance of workers' compensation benefits waives tort remedies). In *Anderson,* we again recognized the interplay between sections 8 and 6 of article XVIII and concluded that the legislature could prohibit a worker who had not previously waived tort rights but had accepted compensation benefits from also seeking tort damages from the employer. 147 Ariz. at 461–62, 711 P.2d at 600–01.[2]

¶ 12　This case, however, is a contract action, though it is based on and necessarily pleads the prior industrial injury arising from a risk of employment. In such cases, Brush Wellman argues, the exclusivity doctrine applies because if not for the industrial injury, the contract action could not be brought. Indeed, Professor Larson points out the danger of plaintiffs recharacterizing tort claims as contract actions to circumvent the workers' compensation exclusivity provisions. 6 A. Larson, The Law of Workmen's Compensation § 65.38, at 12–49 to 12–53 (1999); *see also Vineyard v. Southwest Engi-*

2.　Those interested in the origin and evolution of these clauses should read Professor Roger Henderson's scholarly article: *Tort Reform, Sepa-*

*ration of Powers, and the Arizona Constitutional Convention of 1910,* 35 Ariz.L.Rev. 535, 573–605 (1993).

*neering & Contracting Co. Inc.*, 117 Ariz. 52, 53, 570 P.2d 823, 824 (App.1977).

¶ 13   The present action, however, is not brought to recover damages caused by the industrial injury but only to recover on Brush Wellman's promise to provide benefits over and above any compensation benefits Plaintiffs received for a specific work-related injury.   This action is not a disguised method to seek tort recovery for the industrial injury.   *Cf.* 6 A. LARSON, *supra* n. 41.1, at 12–50 (citing *Schefsky v. Evening News Ass'n,* 169 Mich.App. 223, 425 N.W.2d 768 (1988)) and n. 43, at 12–53 (citing *Hensley v. United States,* 279 F.Supp. 548 (D.Mont.1968)).   Tort recovery for an industrial injury can include "unlimited recovery for actual damages, expenses for past and prospective medical care, past and prospective pain and suffering, lost earnings, and diminished earning capacity." *Bryant v. Silverman,* 146 Ariz. 41, 47, 703 P.2d 1190, 1196 (1985).   None of these damages are sought here;  Plaintiffs are not camouflaging a tort claim as a contract claim but, in the contract count, seeking only money owed by reason of Brush Wellman's contractual obligation to supplement their compensation benefits by paying them the difference between their actual earnings and the portion of compensation benefits representing lost earning capacity.

**2.   Breach of a promise to provide supplemental benefits**

■  ¶ 14   Our courts have not yet addressed the question whether our workers' compensation statutes bar an employee's contract claim for supplemental benefits.   In *Vineyard,* however, the court of appeals held that an employee's acceptance of workers' compensation benefits barred his claim for damages for an industrial injury even though the action was pleaded as a breach of the employer's express promise to provide safety equipment.   While the court held the claim was barred by the Act's exclusivity provision, it also stated in passing that "nothing in the workmen's compensation law prohibits ... an express contract [to provide compensation over and above workmen's compensation benefits]."   117 Ariz. at 53, 570 P.2d at 824 (citing *Lechuga, Inc. v. Montgomery,* 12 Ariz.

App. 32, 36, 467 P.2d 256, 260 (1970));   *see also Fredericks v. Liberty Mut. Ins. Co.,* 255 Ill.App.3d 1029, 194 Ill.Dec. 445, 627 N.E.2d 782 (1994) (action on contract collateral to workers' compensation system not barred); *Hornsby v. Southland Corp.,* 487 A.2d 1069, 1072 (R.I.1985) (worker's claim for breach of contractual promise of safe work environment is precluded by workers' compensation, but employer's breach of contractual promise to provide employee with more benefits than provided by workers' compensation may not be);   Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer,* 55 TENN. L.REV. 405, 490 (1988) ("Obviously, if the employer breaches his contract with his employee, thereby causing purely economic loss, the exclusive remedy rule should not apply.").

¶ 15   We do not find review of this case law very helpful.   No case directly on point is cited, and we find none in our own research.   Comments in various cases indicate that a contract to pay benefits supplementing workers' compensation is not within the exclusivity doctrine.   *See, e.g., Hensley,* 279 F.Supp. 548;   *Vineyard,* 117 Ariz. at 53, 570 P.2d at 824;   *Fredericks,* 194 Ill.Dec. 445, 627 N.E.2d at 786;   *Schefsky,* 169 Mich.App. 223, 425 N.W.2d 768;   *Hornsby,* 487 A.2d at 1072. We prefer, however, not to decide this or any case on fragments of dicta.   Text, sound policy, and fulfillment of constitutional and statutory goals point the way.   The exclusivity provision is part of the *quid pro quo* between the employee's no-fault recovery and the employer's obligation to pay benefits. *Franks,* 149 Ariz. at 294, 718 P.2d at 196 (citing 2A A. LARSON, *supra* § 65.11, at 12–1 to 12–2, now 6 A. LARSON, *supra* § 65.11, at 12–1 to 12–12 (1999)).   This trade-off, permitted by the constitution and imposed by statute, frees the employer from tort liability.

¶ 16   But Plaintiffs here seek neither to impose tort liability nor to recover tort damages.   The system was not designed or intended to free an employer from performing its contractual promises to provide specific benefits to its employees.   Suppose, for example, that an employer made a contract to pay sales commissions to an employee.

Would the exclusivity doctrine preclude that employee from enforcing the contract after he had been hurt in an industrial accident and had accepted compensation? Such immunity for breach of contract was not part of the *quid pro quo* for workers' compensation.

¶ 17 Nor would immunity from performance of contractual promises harmonize with the text of our constitution or our workers' compensation statutes. While it is true that § 12–1024(A) forbids, without limitation, an employee's institution of "court proceedings" against an employer, that statute has never been and cannot be read apart from the constitutional provision that authorizes its existence. *Kilpatrick*, 105 Ariz. at 420, 466 P.2d at 25. Article XVIII, § 8 mandates a system that applies to "personal injury ... or death ... from any accident arising out of and in the course of ... [ ] employment...." The employer's no-fault obligation to pay compensation for such injuries frees it from tort liability for industrial injury, no matter how the claim may be disguised. The gist of the contract count in the present action, however, is not based on a personal injury but on Brush Wellman's alleged breach of its contractual promise. The relief sought is not damages caused by the injury but supplemental benefits promised in the contract. Freedom from performance of contractual promises was not part of the constitutional text that required the legislature to enact the workers' compensation system. Nor, we believe, has the legislature sought to exceed the constitutional mandate. The statute's text is read *in pari materia* with the constitutional provision that authorizes it. *See Kilpatrick*, 105 Ariz. at 416–17, 466 P.2d at 21–22.

¶ 18 Finally, expansion of the exclusivity doctrine, as sought by Brush Wellman, would be very bad policy. Brush Wellman's industrial pursuit puts a number of its employees at grave and perhaps unavoidable risk. To engage skilled employees, such an employer might want or need to offer specific protection for its workers and their families should workers suffer the harm that makes the job so dangerous. Interpreting the exclusivity doctrine so broadly as to permit an employer to renege on such promises would hinder honest employers because workers who learn that their prospective employer's promise is unenforceable would likely reject any offer to perform the high-risk work. Conversely, such an interpretation would allow an unscrupulous employer that had no intention of performing its promise to take advantage of gullible, unsophisticated, or desperate workers. We refuse to adopt a rule that reaches these untoward and undesirable results.

## CONCLUSION

¶ 19 We conclude that Plaintiffs' contract count is not barred by the doctrine of exclusivity. The court of appeals' decision is therefore vacated to the extent that it is inconsistent with this opinion. The trial court's grant of summary judgment on this count is vacated, and the case is remanded to the trial court for proceedings consistent with this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice.