3 P.3d 970

**UNIQUE EQUIPMENT CO., INC., an Arizona corporation, Third Party Plaintiff–Appellant,**

v.

**TRW VEHICLE SAFETY SYSTEMS, INC., a foreign corporation, Third Party Defendant–Appellee.**

No. 1 CA–CV 98–0164.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 31, 1999.

As Corrected Sept. 17, 1999.

Review Denied April 18, 2000.

---

Bess Kunz, A Professional Corporation by Donald R. Kunz and Donald J. Sapala, Phoenix, for Appellant.

Squire, Sanders & Dempsey, L.L.P. by Donald A. Wall, Julie A. Inderlied and Kevin J. Bonner, Phoenix, for Appellee.

## OPINION

FIDEL, Presiding Judge.

¶ 1 In this appeal from the trial court's dismissal of Unique Equipment Co., Inc.'s third-party complaint against TRW Vehicle Safety Systems, Inc., we resolve two questions of first impression. When an employer has provided design specifications for the manufacture of equipment to be used exclusively by its employees, and an employee covered by workers' compensation brings a products liability suit against the manufacturer for damages attributed to a design defect in the equipment,

(1) Do the exclusive remedy provisions of Arizona's Workers' Compensation Act bar the manufacturer from seeking common-law indemnification from the employer?

(2) Is the manufacturer entitled to statutory indemnification from the employer pursuant to Arizona Revised Statutes Annotated ("A.R.S.") § 12–684?

## BACKGROUND

¶ 2 Freda Dyse, an employee of TRW, was injured while working with an API inflator test cell that Unique manufactured in accordance with plans and specifications TRW provided. Ms. Dyse accepted workers' compensation benefits from TRW and brought a products liability action against Unique.

¶ 3 Unique filed a third-party complaint against TRW, alleging that, because any defect in the cell design arose from TRW's plans and specifications, TRW must indemnify Unique for any damages it might owe to Dyse. TRW moved to dismiss Unique's complaint on the ground that the exclusive remedy provisions of the Workers' Compensation Act bar Unique's indemnity claim.

¶ 4 From the trial court's judgment of dismissal, Unique timely appeals. Although the trial court styled its judgment a dismissal for failure to state a claim pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure, both parties submitted documents and argued facts outside the pleadings, and the record indicates that the trial court considered them.[1] Under these circumstances, TRW's motion should have been treated as one for summary judgment, and we review the trial court's order of dismissal as if it were a summary judgment. *See* Ariz. R. Civ. P. 12(b); *Franzi v. Koedyker,* 157 Ariz. 401, 407–08, 758 P.2d 1303, 1309–10 (App. 1985).

¶ 5 On appeal from summary judgment, we view the evidence in the light most favorable to the party against whom judgment was entered, and determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *See Gonzalez v. Satrustegui,* 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993). The essential facts are not dis-

1. The trial court stated that the arguments in TRW's reply were persuasive. The arguments in TRW's reply refer to documents and facts that were not part of the complaint.

puted; the questions presented are purely ones of law.

## COMMON LAW INDEMNITY

¶ 6 With exceptions not pertinent here, Arizona's Workers' Compensation Act provides that employers who comply with its provisions

> shall not be liable for damages at common law or by statute, ... for injury or death of an employee ... but it shall be optional with employees to accept compensation as provided by this chapter or to reject the provisions of this chapter and retain the right to sue the employer as provided by law.

A.R.S. § 23–906 (1995); *see also* A.R.S. § 23–1022(A) (1995) (workers' compensation is the exclusive remedy for injury or death to a covered employee, subject to an exception for death or injury caused by the wilful misconduct of the employer or a co-employee); A.R.S. § 23–1024(A) (1995) (by accepting workers' compensation coverage, an employee waives the option of direct suit against the employer). The parties do not dispute that TRW complied with the provisions of the Act, that Freda Dyse accepted compensation under the Act, and that the Act bars Ms. Dyse from suing TRW for damages arising from her work-related injury. The parties debate whether the Act also precludes Unique's third-party claims against TRW.

¶ 7 Although A.R.S. § 23–906 provides that a compliant employer "shall not be liable for damages at common law," Unique argues that these words are limited by context to claims by employees who have accepted workers' compensation; according to Unique, a worker who elects workers' compensation coverage forfeits his or her *own* right to sue the employer, not the right of someone else to do so.

■ ¶ 8 Unique correctly points out, for example, that an employer's contractual obligation to indemnify a third party sued by an injured employee is not abrogated by the exclusive remedy provisions of the Act. *See Superior Cos. v. Kaiser Cement Corp.*, 152 Ariz. 575, 580, 733 P.2d 1158, 1163 (App. 1986); *Lechuga, Inc. v. Montgomery*, 12

Ariz.App. 32, 36, 467 P.2d 256, 260 (1970). To be enforceable, however, a contract's indemnification provision must be express. *See Superior*, 152 Ariz. at 577, 733 P.2d at 1160. It is undisputed that the contract between TRW and Unique did not contain such a provision.

¶ 9 Unique argues, however, that implied contractual indemnity is no less compatible than express contractual indemnity with the exclusivity provisions of the Act. Because TRW provided the design plans and specifications and contractually obliged Unique to meet them, Unique argues that TRW should be subject to implied contractual indemnity for any damages resulting from a defect in its design.

¶ 10 Arizona courts have recognized various forms of common law indemnity, including implied contractual indemnity. *See, e.g., INA Ins. Co. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 722 P.2d 975 (App.1986); *First Nat'l Bank v. Otis Elevator Co.*, 2 Ariz.App. 596, 411 P.2d 34 (1966). No Arizona appellate court, however, has yet decided whether an implied obligation to indemnify can survive the exclusivity provisions of the Workers' Compensation Act.

¶ 11 According to Professor Larson, most jurisdictions reject the implication of indemnity against an employer covered by the exclusivity provisions of a workers' compensation act. *See 7 Larson's Workers' Compensation Law*, ch. 14 § 76.71. But Unique responds that many such cases are distinguishable by reference to explicitly comprehensive statutory language. For example, in the District of Columbia, the relevant section of the D.C.Code provides that "the liability of an employer prescribed in § 36–303 shall be exclusive and in place of all liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, *and anyone otherwise entitled to recover damages from such employer-at-law on account of such injury or death.*" D.C.Code Ann. § 36–304(a) (1997), *construed in Myco, Inc. v. Super Concrete Co.*, 565 A.2d 293, 296 (D.C.App.1989) (emphasis added). Similarly, the New Mexico Supreme Court, in adopting the majority rule, construed a provision of the New Mexico Code

providing that "any employer who has elected to and has complied with the provisions of this act, including *the provisions relating to* insurance, *shall not be subject to any other liability whatsoever* for the death of or personal injury to any employee, except as in this act provided." N.M. Stat. Ann. § 59-10-5 (1960) (current version at N.M. Stat. Ann. § 52-1-8 (1991)), *construed in Royal Indemnity Co. v. Southern California Petroleum Corp.,* 67 N.M. 137, 353 P.2d 358, 360-61 (1960) (emphasis added). Unique argues that by comparison, the language of A.R.S. § 23-906 is far less comprehensive.

¶ 12 Our supreme court has recently rejected the assertion that Arizona's exclusivity provisions "encompass[ ] all common law remedies against the employer." *Stoecker v. Brush Wellman, Inc.,* 194 Ariz. 448, 451, 984 P.2d 534, 537 (1999). Even tort claims "that do not fall within the scope of the workers' compensation act are not barred by its exclusivity provision[s]." *Id.* (citing *Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580 (1987) (action against employer for intentional infliction of emotional distress not barred), and *Franks v. United States Fidelity & Guar. Co.,* 149 Ariz. 291, 718 P.2d 193 (App.1985) (action for bad faith against employer's compensation carrier not barred)). In our opinion, however, the present action *does* fall within the scope of the Act, for, even though it constitutes a third-party implied contractual *indemnity claim against the employer,* it arises from an accidental injury to a covered employee who was injured in the course and scope of her employment.

¶ 13 We are assisted in reaching our conclusion by a basic rule of statutory construction:

If . . . statutes relate to the same subject or have the same general purpose-that is, statutes which are in pari materia-they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law. As they must be construed as one system governed by one spirit and policy, the legislative intent therefor must be ascertained not alone from the literal meaning of the wording of the statutes but also from the view of the whole system of related statutes. This rule of construction applies even where the statutes were enacted at different times, and contain no reference one to the other, and it is immaterial that they are found in different chapters of the revised statutes.

*State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970).

¶ 14 Applying the *Larson v. Farley* rule of harmonious construction, we find guidance for our decision in a portion of the Uniform Contribution Among Tortfeasors Act (UCATA), A.R.S. § 12-2501 *et seq.* (1994 & Supp. 1998), that addresses claims against covered employers. Section 12-2501(F)(3) reads as follows:

This section and [sections following] . . . do not:

. . . .

3. Create a right of contribution against an employer or other person who has paid or who is liable for workmen's compensation in connection with an injury or death pursuant to title 23, chapter 6, unless the employer or other person is subject to direct suit under § 23-1022. For purposes of determining the amount of pro rata shares under this article, any employer or other person who has paid or who is liable for workmen's compensation shall not be considered unless the employer or other person is subject to direct suit under § 23-1022.

¶ 15 The interrelationship is evident between section 12-2501(F)(3) and the exclusivity provisions of the Workers' Compensation Act. Section 12-2501(F)(3) applies uniquely to employers who have provided workers' compensation and relieves them of a contribution obligation that the law would otherwise impose. And though there are differences between contribution and common law indemnification, both are means for shifting loss from one who is not at fault to another who is at fault. *See* A.R.S. § 12-2501(F)(1) (preserving the distinction between indemnity and contribution under the UCATA); *Shea v. Superior Ct.,* 150 Ariz. 271, 274, 723 P.2d 89, 92 (1986) (common law indemnification is available only when the party seeking indemnification is not at fault); *First Nat'l Bank,* 2 Ariz.App. at 597, 411 P.2d at 35

(obligation to indemnify may be implied if " 'in justice another ought to pay' ") (quoting 42 C.J.S. Indemnity § 20, at 594–95).

¶ 16 The legislature in UCATA adopted a strong public policy in favor of contribution among joint tortfeasors, yet declined to create a right of contribution, arising from a workplace accident, against an employer who has paid or is liable for workers' compensation to the victim of that accident, regardless of the employer's fault. This exception demonstrates that the legislature regards a third-party claim against a compliant employer as one within the scope of workers' compensation exclusivity, *see Stoecker,* 194 Ariz. at 451, 984 P.2d at 537, as long as the claim arises from an accidental injury to a covered employee who was injured within the course and scope of employment.[2]

█ ¶ 17 Our interpretation is also supported by the availability of express contractual indemnity in circumstances such as this. To interpret our statutes as foreclosing common law indemnification actions to parties like Unique does not preclude them from making contractual indemnity part of their arrangement with the employer. *See, e.g., Superior,* 152 Ariz. at 580, 733 P.2d at 1163. A manufacturer who agrees to produce workplace equipment in accordance with plans and specifications provided by a covered employer may, if it deems indemnity important, negotiate for contractual indemnity and price its product according to the presence or absence of indemnity. Tort law need not supply by implication a device that contract law permits arms-length bargainers to achieve by negotiation.

█ ¶ 18 For the foregoing reasons, we hold that when an employer has provided design specifications for the manufacture of equipment to be used exclusively by its employees, and an employee covered by workers' compensation brings a products liability suit against the manufacturer for damages attributed to a design defect in the equipment, the exclusive remedy provisions of Arizona's Workers' Compensation Act bar the manufacturer from seeking common-law indemnification from the employer.

## STATUTORY INDEMNITY

█ ¶ 19 Just as our courts have recognized that the Workers' Compensation Act does not abrogate an employer's susceptibility to an express contractual obligation to indemnify a third party, similarly they have recognized that the Act does not abrogate an employer's susceptibility to an independent statutory obligation to indemnify a third party. *See Tucson Elec. Power Co. v. Dooley–Jones & Assoc., Inc.,* 155 Ariz. 340, 344, 746 P.2d 510, 514 (App.1987); *Tucson Elec. Power Co. v. Swengel–Robbins Constr. Co.,* 153 Ariz. 486, 488, 737 P.2d 1385, 1387 (App. 1987). Such obligations are "based, not upon the employment relationship between [the employee and employer] ... but upon the separate, statutory duties imposed on [the employer] ... and owed to [a third party]." *Dooley–Jones,* 155 Ariz. at 344, 746 P.2d at 514.

█ ¶ 20 Unique argues that TRW qualifies as a "seller" obliged to indemnify Unique as a "manufacturer" pursuant to A.R.S. § 12–684(C) (1992), which provides in pertinent part:

C. In any product liability action *the manufacturer of the product shall be indemnified by the seller* of the product for any judgment rendered against the manufacturer and shall also reimburse the manufacturer for reasonable attorneys' fees and costs incurred in defending such action, *if the seller provided the plans or specifications* for the manufacture or preparation of the product, and such plans or specifications were a substantial cause of the product's alleged defect and if the product was manufactured in compliance

---

**2.** The UCATA exception also defeats Unique's argument that the legislature could not have intended a third party's right to sue the employer to turn upon the employee's election to accept workers' compensation-a matter beyond the third party's control. In A.R.S. § 12–2501(F)(3), the legislature explicitly provided for precisely that result. We note, however, that Unique overstates its case in asserting that, in manufacturing circumstances such as this, the manufacturer's right to sue the employer for indemnity turns upon a matter beyond its control. A manufacturer may make such indemnity an express part of its contract. *See infra* ¶ 17.

with and according to the plans or specifications of the seller.

(Emphasis added.) Section 12–681 defines "seller" as "a person or entity, including a wholesaler, distributor, retailer or lessor, engaged in the business of leasing any product or selling any product for resale, use or consumption." A.R.S. § 12–681(7) (1992 & Supp.1998).

¶ 21 In the alternative, Unique argues that TRW qualifies as a "manufacturer" who must indemnify Unique as a "seller" under A.R.S. § 12–684(A) (1992), which provides in pertinent part:

A. In any product liability action where the manufacturer refuses to accept a tender of defense from the seller, the manufacturer shall indemnify the seller for any judgment rendered against the seller and shall also reimburse the seller for reasonable attorneys' fees and costs incurred by the seller in defending such action.

Section 12–681 defines "manufacturer" as

a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a user or consumer, including a seller owned in whole or significant part by the manufacturer or a seller owning the manufacturer in whole or significant part.

A.R.S. § 12–681(1) (1992).

¶ 22 For the purposes of subsections 12–684(C) and 12–681(7), TRW certainly qualifies as one who provided plans and specifications for the manufacture of a product. Unique stumbles, however, in asserting that TRW was a seller of the product, for TRW was not "engaged in the business of" leasing or selling inflator test cells to others for resale, use, consumption, or any other purpose. A.R.S. § 12–681(7). It was rather the consumer of inflator test cells that were built to its specifications for its own exclusive in-house use. This is not, in normal English usage, a description of a "seller." Nor does it comfortably fit the sense of that term within the context of subsections 12–684(C) and 12–681(7).

¶ 23 Similarly, for the purposes of subsections 12–684(A) and 12–681(1), TRW's plans and specifications may place it within the design phase of manufacturing. Yet TRW was not designing a product for "sale to a user or consumer," but rather providing specifications for a product to be fabricated for its own exclusive in-house use. A.R.S. § 12–681(1).

■ ¶ 24 We are mindful, in examining whether TRW can qualify as either a "seller" or "manufacturer" pursuant to these statutes, that the strict product liability of an enterprise does not turn upon a precise definitional usage of those terms. *See Torres v. Goodyear Tire & Rubber Co.*, 163 Ariz. 88, 92, 786 P.2d 939, 943 (1990) (courts should "abjure technical definitions in defining the categories of enterprise to which the doctrine of strict [product] liability should apply"). For example, the Arizona courts have extended strict liability to a variety of enterprises that do not fit a common notion of manufacturer or seller. *See, e.g., Torres*, 163 Ariz. at 93, 786 P.2d at 944 (trademark licensor); *Jordan v. Sunnyslope Appliance Propane & Plumbing Supplies Co.*, 135 Ariz. 309, 660 P.2d 1236 (App.1983) (dealer in used goods); *Gaston v. Hunter*, 121 Ariz. 33, 588 P.2d 326 (App.1978) (donor of pharmaceutical product); *Sequoia Mfg. Co. v. Halec Constr. Co.*, 117 Ariz. 11, 570 P.2d 782 (App.1977) (lessor of product).

¶ 25 The common thread in such cases, however, is that "the character of the injury-producing conduct" places the enterprise "within the class … of those 'in the business of placing products in the stream of commerce.' " *Torres*, 163 Ariz. at 92, 786 P.2d at 943 (quoting *Lechuga, Inc. v. Montgomery*, 12 Ariz.App. 32, 38, 467 P.2d 256, 262 (1970)). That thread is lacking here. *Torres* explained that the policy behind strict products liability law is to identify and hold responsible " 'those who marketed the product, profit from its sale, and have the know how to remove its defects before placing it in the chain of distribution.' " 163 Ariz. at 91, 786 P.2d at 942 (quoting *Tucson Indus., Inc. v. Schwartz*, 108 Ariz. 464, 467–68, 501 P.2d 936, 939–40 (1972)). This policy does not apply to TRW, which did not provide design specifications for inflator test cells to be placed into the "stream of commerce" or the

"chain of distribution," but rather for inflator test cells to be used uniquely by its own employees.

 ¶ 26 As for the employees, this court has already determined that product liability does not arise when an employer furnishes a product to an employee for in-house use, for the employee receives the product "as an employee and not as a member of the consuming public." *Allen v. Southwest Salt Co.,* 149 Ariz. 368, 373, 718 P.2d 1021, 1026 (App.1986); *see also Hills v. Salt River Project Ass'n,* 144 Ariz. 421, 425–26, 698 P.2d 216, 220–21 (App.1985). To the extent that an employer may be faulted for an unreasonable danger to its employees that lurks within its own design or specifications for a product that is intended exclusively for in-house use, that fault arises within the context of the employment relationship, not within a relationship of commercial distribution. It is fault, in other words, within the scope of the exclusivity provisions of the Worker's Compensation Act and not within the scope of A.R.S. § 12–684. *See Stoecker,* 194 Ariz. at 451, 984 P.2d at 537; *see also Hills,* 144 Ariz. at 426, 698 P.2d at 221.

¶ 27 For the foregoing reasons, we conclude that to construe § 12–684 as creating a statutory exception to the exclusivity provisions of the Workers' Compensation Act would serve the policy of neither statute. When an employer has provided design specifications for the manufacture of equipment to be used exclusively by its employees, and an employee covered by workers' compensation brings a products liability suit against the manufacturer for damages attributed to a design defect in the equipment, the manufacturer is not entitled to statutory indemnification from the employer pursuant to A.R.S. § 12–684.

CONCLUSION

¶ 28 Because the Workers' Compensation Act precludes Unique's third-party claims against TRW, we affirm summary judgment in favor of TRW. Both parties request attorneys' fees on appeal, pursuant to A.R.S. § 12–341.01, asserting that this indemnity action arises out of contract. To TRW, the prevailing party, we award reasonable attor-

neys' fees and costs in an amount to be determined upon TRW's compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

CONCURRING: SHELDON H. WEISBERG, Judge, and E.G. NOYES, Jr., Judge.